*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
GASTON, STEWART, and HOUTZ
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Sean C. MACWHINNIE**
Fire Controlman Chief (E-7), U.S. Navy
*Appellant*

**No. 201900243**

Decided: 2 March 2021

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
Hayes C. Larsen (arraignment)
Michael J. Luken (motions)
Keaton H. Harrell (motions, trial)

Sentence adjudged 26 April 2019 by a general court-martial convened at Naval Station Norfolk, Virginia, consisting of a military judge alone. Sentence approved by the convening authority: reduction to E-1, confinement for 6 months, and a dishonorable discharge.

For Appellant:
*Lieutenant Clifton E. Morgan III, JAGC, USN*

For Appellee:
*Lieutenant Commander Jeffrey S. Marden, JAGC, USN*

_____

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under NMCCA
Rule of Appellate Procedure 30.2.**

_____

PER CURIAM:

Appellant was convicted, contrary to his pleas, of violating a lawful general regulation and wrongfully viewing child pornography, in violation of Articles 92 and 134, Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 892, 934 (2012), for using a shipboard computer to view pornography, including child pornography, during a deployment.

Appellant asserts two assignments of error [AOEs]: (1) the military judge abused his discretion by allowing the Government to introduce images that were not child pornography to prove intent, knowledge, and absence of mistake or accident pursuant to Military Rule of Evidence [Mil. R. Evid.] 404(b); and (2) the evidence is legally and factually insufficient to support Appellant's conviction for wrongfully viewing child pornography because the evidence does not show Appellant knowingly did so. We find no prejudicial error and affirm the findings and sentence.

## I. BACKGROUND

During his deployment serving with USS *San Antonio* (LPD 17) in September and October 2016, Appellant frequently used government computers to access the internet. The ship did not have wireless connectivity, but Sailors were allowed to view "unblocked" websites using the ship's computers, which were accessible with a common access card and password. Websites known to contain inappropriate content, to include pornography, and considered "unsafe" were blocked; however, websites that were known to be "safe" were generally accessible and were unblocked. In order to monitor onboard computer usage, the ship assigned usernames to Sailors using their first initial and last name. Appellant's user name was "smacwhinnie," and he was the only individual onboard with the last name "MacWhinnie."

The image-sharing website "Pinterest" was considered to be a safe website platform and was unblocked and accessible to users on the *San Antonio* using government computers. Pinterest allows users to save, share, and search for images. A potential user can open an account by providing an email address to which it can be registered. Once the account is open, the user can look through content on the website and save or "pin" images to the user's account. Pinned images are saved on "boards" with "board titles" created and

named by the user. These boards can be publically viewed or kept private. Pinterest also gives the user the option to "like" an image, which causes Pinterest to place that image in an automatically created "Your Pinterest Likes" board in the user's account.

During Appellant's deployment, Pinterest found ten images of suspected child pornography had been saved to a Pinterest account associated with Appellant's name and email address. Pinterest reported the images and information regarding their discovery to the National Center for Missing and Exploited Children [NCMEC]'s "CyberTipline," which produced a report for each of the images listing Appellant's name and email address as the account user associated with them. The internet protocol (IP) addresses associated with the account led back to the Norfolk Navy Internet Security and Acceleration [ISA] proxy server, which logged internet access from the *San Antonio* by user name, website accessed, and date and time of access of websites visited by its users. This evidence, in turn, connected the use of Appellant's shipboard computer account to the times during which the images of suspected child pornography were saved to his Pinterest account.

The Naval Criminal Investigative Service [NCIS] subpoenaed subscriber information from Google for the email address on the Pinterest account and confirmed it belonged to Appellant. NCIS then executed search warrants on Pinterest and in response received files containing images and "board titles" from the account, as well as another account listed under Appellant's name. These included a board entitled, "Too Young," containing images of younger-looking females in revealing clothing; a board entitled, "Yes Sir," containing images of females in revealing underwear or other clothing, with some nudity; a board entitled, "Hot Chicks," containing adult female images with partial nudity; and a board entitled, "Your Pinterest Likes," containing among other things images of adult pornography and some younger-looking females in revealing clothing. The files provided by Pinterest in response to the warrant did not contain any of the ten images of suspected child pornography that Pinterest had originally found and reported to NCMEC's CyberTipline.

NCIS interviewed Appellant, who after waiving his Article 31(b) rights admitted that he had frequently used government computers aboard the ship to access pornography during the relevant time periods. Appellant also admitted that he had frequently accessed Pinterest through the accounts described above and had viewed and saved (i.e., "pinned") pornography on those accounts. Appellant denied searching for or viewing child pornography.

Based on the investigation, Appellant was charged with viewing and possessing two images of child pornography from the NCMEC CyberTipline reports and misuse of a government computer. Prior to trial, the Government

provided notice of its intent to introduce under Military Rule of Evidence [Mil. R. Evid.] 404(b) additional images contained in the NCMEC reports, as well as additional images and user-created board titles found in Appellant's Pinterest accounts. The additional images depicted child erotica and adult pornography placed on Pinterest boards created by Appellant. Some of the board titles and images contained on them, including "Hot Chicks," were made publically viewable, while other board titles and images, to include the board entitled, "Too Young," were made private. Trial defense counsel moved to exclude this evidence, but the military judge permitted the Government to introduce the additional images and board titles under Mil. R. Evid. 404(b) to prove Appellant's intent, knowledge, and absence of mistake or accident with respect to the charges of knowingly and wrongfully viewing and possessing child pornography. Appellant was convicted of knowingly and wrongfully viewing child pornography and misuse of a government computer, but acquitted of knowingly and wrongfully possessing child pornography.

## II. DISCUSSION

### A. The Military Judge's Rulings Under Mil. R. Evid. 404(b)

Appellant asserts that the military judge's rulings under Mil. R. Evid. 404(b) were erroneous. We review a military judge's ruling on evidentiary rulings pursuant to Mil. R. Evid 404(b) for an abuse of discretion.[1] "To find an abuse of discretion requires more than a mere difference of opinion—the challenged ruling must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous."[2] A military judge abuses his discretion when he (1) predicates his ruling on findings of fact that are not supported by the evidence of record; (2) uses incorrect legal principles; (3) applies correct legal principles to the facts in a way that is clearly unreasonable; or (4) fails to consider important facts.[3] Conclusions of law are reviewed de novo.[4]

Mil. R. Evid. 404(b) "is a rule of inclusion" that "permits admission of relevant evidence of other crimes or acts unless the evidence tends to prove only

---

[1] *United States v. Harrow,* 65 M.J. 190, 199 (C.A.A.F. 2006).

[2] *United States v. Jasper*, 72 M.J. 276 279-80 (C.A.A.F. 2013).

[3] *United States v. Commisso*, 76 M.J. 315, 321 (C.A.A.F. 2017) (citations omitted).

[4] *United States v. Rodriguez,* 60 M.J. 239, 246 (C.A.A.F. 2004).

criminal disposition."[5] Evidence offered under Mil. R. Evid. 404(b) must satisfy the three-factor test announced in *United States v. Reynolds*: (1) it must reasonably support a finding that the appellant committed prior crimes, wrongs, or acts; (2) it must be logically relevant (i.e., it must make a fact of consequence more or less probable); and (3) it must be legally relevant (i.e., its probative value must not be substantially outweighed by the danger of unfair prejudice).[6] When analyzing the last factor—legal relevance under Mil. R. Evid. 403—a military judge should consider the following non-exhaustive factors from *United States v. Wright* and *United States v. Berry*: (1) strength of the proof of the prior act, (2) probative weight of the evidence, (3) potential to present less prejudicial evidence, (4) possible distraction of the fact finder, (5) time needed to prove the prior conduct, (6) temporal proximity of the prior event, (7) frequency of the acts, (8) presence of any intervening circumstances, and (9) relationship between the parties.[7]

At the conclusion of the hearing on the Defense motion to exclude, the military judge determined that the Government had met its burden on all of the *Reynolds* factors and ruled the images and board titles from Appellant's Pinterest accounts were admissible to prove intent, knowledge, and absence of mistake or accident under Mil. R. Evid. 404(b). He found that, based on the subscriber information provided by Pinterest and Appellant's admissions to NCIS, the evidence reasonably supported that Appellant created the Pinterest accounts, created public and private title boards within those accounts, and pinned the images to those boards.[8] He further found the images logically relevant in that they supported the conclusion that Appellant sorted images on Pinterest to delineate between older and younger looking subjects, which bore on whether Appellant's viewing and possession of child pornography was intentional and knowing. Finally, the military judge properly discussed and applied the third *Reynolds* factor in concluding that the danger of

---

[5] *United States v. Browning,* 54 M.J. 1, 6 (C.A.A.F. 2000) (citations omitted).

[6] *United States v. Reynolds,* 29 M.J. 105, 109 (C.M.A. 1989).

[7] *United States v. Berry*, 61 M.J. 91, 95 (C.A.A.F. 2005) (citing *United States v. Wright*, 53 M.J. 476, 482 (C.A.A.F. 2000)). While the *Wright-Berry* factors were initially used to assess the legal relevance of propensity evidence offered under Mil. R. Evid. 413, our superior court has also used them to assess the legal relevance of other-acts evidence under Mil. R. Evid. 404(b). *See United States v. Barnett*, 63 M.J. 388, 396 (C.A.A.F. 2006).

[8] R. at 151-53.

unfair prejudice did not substantially outweigh the probative value of the evidence under Mil. R. Evid 403. In doing so, the military judge found, among other things, that the probative value of the images was high toward their intended use under Mil. R. Evid. 404(b), there was no significant temporal disparity between the charged offenses and the other acts, and there was no significant contextual disparity in the pinning of the images and the viewing of child pornography.

The military judge also ruled that the five additional images from the NCMEC CyberTipline reports were admissible to prove intent, knowledge, and absence of mistake or accident under Mil. R. Evid. 404(b). With regard to the *Reynolds* factors, the military judge concluded the evidence reasonably supported that the images admitted were saved to Appellant's account by Appellant.[9] He determined the images were logically relevant in that they supported the supposition that Appellant sorted images on Pinterest to delineate between older and younger looking subjects, which bore on whether Appellant's alleged viewing and possession of child pornography was intentional and knowing. Finally, the military judge properly applied the third *Reynolds* factor in concluding that the danger of unfair prejudice did not substantially outweigh the probative value of the evidence under Mil. R. Evid 403. In doing so, the military judge applied the *Wright-Berry* factors and reached the same conclusions he did in the first Mil. R. Evid. 404(b) ruling.

We find the military judge's discussion of the *Reynolds* factors to be thorough and reasonable, and we agree with his conclusions, including the factors regarding legal relevance, supporting admission of the evidence. Hence, we find no abuse of discretion in his rulings.

## B. Appellant's Conviction for Wrongfully Viewing Child Pornography is Legally and Factually Sufficient

Appellant argues that his conviction for wrongfully viewing child pornography is legally and factually insufficient because the evidence did not show Appellant *knowingly* viewed child pornography. To determine legal sufficiency, we review the evidence "in the light most favorable to the prosecution" and ask whether "a reasonable factfinder could have found all the essential

---

[9] In addition to the information provided by Pinterest and Google, as well as Appellant's admissions to NCIS, the ship's information systems technician testified that the only way to access the ship's computers was with a common access card and password.

elements beyond a reasonable doubt."[10] In conducting this analysis, we must "draw every reasonable inference from the evidence of record in favor of the prosecution."[11]

In testing for factual sufficiency, we "weigh[ ] the evidence in the record of trial and mak[e] allowances for not having personally observed the witnesses" in order to determine whether we, ourselves, are "convinced of the accused's guilt beyond a reasonable doubt."[12] We do not defer to the trial court's decision, but take a "fresh, impartial look at the evidence" and must "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt."[13]

In order to sustain the conviction for wrongfully viewing child pornography, the Government must have proven beyond a reasonable doubt that Appellant: (1) knowingly and wrongfully viewed child pornography, and (2) that under the circumstances, the conduct was to the prejudice of good order and discipline in the armed forces and of a nature to bring discredit upon the armed forces.[14] The Manual for Courts-Martial (MCM) defines "child pornography" as "material that contains either an obscene visual depiction of a minor engaging in sexually explicit conduct or a visual depiction of an actual minor engaging in sexually explicit conduct."[15] The MCM defines "sexually explicit conduct" as "actual or simulated: . . . lascivious exhibition of the genitals or pubic area of any person."[16] In order to prove that the accused knowingly and wrongfully viewed child pornography the government must prove beyond a reasonable doubt that the accused was aware that the images were of minors engaged in sexually explicit conduct. An accused may not be convicted of viewing child pornography if he, "was not aware that the images were of minors, or what appeared to be minors, engaged in sexually explicit conduct."[17] "Awareness may be inferred from circumstantial evidence

---

[10] *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987) (citations omitted).

[11] *United States v. Gutierrez*, 74 M.J. 61 (C.A.A.F. 2015) (quoting *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001)).

[12] *Turner*, 25 M.J. at 325.

[13] *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F 2002).

[14] *Manual for Courts-Martial, United States* (2016 ed.), pt. IV, para. 68b.b.(1).

[15] *Id.* at 68b.c.(1).

[16] *Id.* at 68b.c.(7).

[17] *Id.* at 68b.c.(2).

such as the name of a computer file or folder,"[18] and "[a]ny facts or circumstances that show a visual depiction of child pornography was unintentionally or inadvertently acquired are relevant to wrongfulness . . . ."[19]

Here, Appellant was convicted of viewing two images of child pornography. Those images were found by Pinterest on Appellant's Pinterest account, and reported to the NCMEC CyberTipline. Appellant argues that the only direct evidence connecting him to those images are the NCMEC CyberTipline reports and the ship's ISA logs. He also points out that Pinterest's response to the subsequent search warrant from NCIS did not yield any child pornography and there is no evidence to show Appellant searched for child pornography. In response, citing *United States v. Kearns*[20] and *United States v. King*,[21] the Government argues that the burden of proof can be and was met in this case through circumstantial evidence. In *King*, the Court affirmed the appellant's conviction because although forensic evidence could not conclusively show the appellant viewed the images in question, it "still gave rise to an inference" that he did.[22]

We find the evidence legally and factually sufficient in this case. As in *King*, the Government presented a circumstantial case that Appellant knowingly and wrongfully viewed child pornography, based on the information reported to NCMEC by Pinterest, the ISA logs, testimony from the shipboard computer technician, and Appellant's admission to NCIS that he intentionally viewed and saved pornography and images of children in their underwear in categorized folders on his Pinterest account. Most compelling is the evidence that: (1) the ISA logs show Appellant's username accessed Pinterest from the ship at the times the charged images were saved or "pinned" to his Pinterest account; (2) to access Pinterest from a government computer aboard the *San Antonio* required the user to use his common access card and personal identification number; and (3) to save or "pin" an image to a Pinterest account requires concerted action either to upload the image from outside Pinterest (e.g., from a personal device or another webpage) or to actively

---

[18] *Id.*

[19] *Id.* at 68b.c.(9).

[20] 73 M.J. 177 (C.A.A.F. 2014).

[21] 78 M.J. 218 (C.A.A.F. 2019).

[22] *Id.* at 222.

select the image from elsewhere within Pinterest and save or "re-pin" it onto the user's Pinterest account.

Based on this evidence, we find it reasonable to infer Appellant knowingly and wrongfully viewed the two images of child pornography that were found on his Pinterest account.[23] We also find reasonable the military judge's finding that Appellant's conduct, which involved the misuse of a government computer aboard a deployed warship, was both prejudicial to good order and discipline and service discrediting.[24] We conclude a reasonable factfinder could have found all the essential elements of the offense beyond a reasonable doubt. Further, having reviewed the entirety of the record and after weighing the evidence anew, making allowances for not having personally observed the witnesses, we too are convinced beyond reasonable doubt of Appellant's guilt.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[25]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court

---

[23] The Defense's own digital forensics expert agreed that "in order to pin an image [onto an account in Pinterest], you'd have to view that image." R. at 633.

[24] *United Sates v. Phillips*, 70 M.J. 161, 163 (C.A.A.F. 2011) ("[P]roof of the conduct itself may be sufficient for a rational trier of fact to conclude beyond a reasonable doubt, under all the circumstances, it was of a nature to bring discredit upon the armed forces.").

[25] UCMJ arts. 59, 66.